[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 581 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 582 
In order to decide upon the rights of the respective parties, to this suit in reference to the fund in controversy, it will be necessary, first, to ascertain what was the character of the arrangement between Gower Co., and the defendants, and the plaintiff Dodge, as to the shipments of cotton to be made by him; and I do not consider it necessary for that purpose to refer to any of the correspondence of an earlier date than the letter of the 14th August, 1846. That letter contains the basis of the arrangement between Dodge and Gower Co., and whether taken by itself, or in connection with the subsequent correspondence, it seems to me that it clearly shows that the understanding of the parties was that Dodge should act under the authority and pursuant *Page 583 
to the directions of Gower Co. They say that they are willing to receive consignments through his instrumentality; that they authorize him to make advances on their account; that such advances may be made either by his drawing upon them, or upon some persons in New-York who shall value upon them; and they refer him to the defendants, who, they say, will be advised of the arrangement, and be requested to co-operate in carrying it into execution. On the 18th August, 1846, Gower Co. wrote a letter to the defendants informing them of the arrangement which had been made with Dodge, and requesting them to give their assistance in carrying it out. The particular manner in which the defendants were to render their aid is not stated in this letter, but it is alleged in the bill of complaint, and admitted in the answer, that the course of business was for Dodge to consign the cotton shipped by him under his agency arrangement to Gower 
Co., and to forward the bill of lading, and invoice of shipment, made out in the name of Gower Co. to the defendants, and to draw upon them for the amount of the advance which they, acting under the arrangement, were to make upon the same, and that they, upon satisfying themselves that such drafts were in accordance with the instructions of Gower Co., were to accept and pay the drafts, and were to reimburse themselves by drawing upon the latter firm for the amount thereof, and their commission. This arrangement, which is clearly proved, or admitted, shows what were the relations between the different parties.
In the month of April, 1847, the plaintiffs made three shipments of cotton to Gower Co., and transmitted to the defendants the invoices and bills of lading made out to the consignees, and drew upon the defendants as usual. These drafts were accepted and paid. The defendants then drew upon Gower 
Co., in London, to reimburse themselves. Two of the bills thus drawn were accepted and paid, and the rest were accepted but not paid; Gower Co. having *Page 584 
become bankrupt. At the time of their failure there was a portion of the cotton shipped to them remaining unsold. This was afterwards sold, and an account was made up between all the parties, by which it appeared that after debiting the whole of the bills drawn upon and accepted by Gower Co., as if they had all been paid there remained a surplus of £ 1,285 3s, 11d,
which forms the subject of controversy in this suit. It is clear that the defendants have no claim against this surplus as consignees who have made advances, for the cotton was never either actually or constructively consigned to them. On the contrary it was shipped directly to Gower Co., and the bills of lading and invoices were made out to them. It is true that they were transmitted to the defendants in the first place, but this was merely for the purpose of enabling them to comply with the instructions of the consignees as to the amount of advances which they should make.
It is contended, however, that although the defendants may have no lien on the shipments as consignees, still that they have an equitable right to them, on the ground that, by the nature of the arrangement existing between the parties, they were appropriated to pay all the bills of the defendants which were accepted by Gower Co. It is not pretended that there was any express agreement to that effect, and it seems to me that no such agreement can be implied from the nature of the arrangement, or from the correspondence between the parties. The defendants never intimated, either to Dodge or to Gower Co., that they relied upon or looked to the proceeds of the shipments as the fund out of which they expected that their bills would be paid; and none of the parties ever intimated to the defendants that such proceeds should be appropriated for that purpose. The bills of lading and invoices were transmitted to the defendants, not for the purpose of showing them that there would be a fund sufficient to meet the drafts which they should draw to reimburse themselves for advances made *Page 585 
to Dodge, but to enable them to see that Dodge did not draw beyond the amount which Gower Co. had by their arrangement with him agreed to advance. In the letter of the defendants of the 8th October, 1846, to Gower Co., they say that their charge of a commission of one per cent is justified by their care and anxiety in seeing that the drafts drawn upon them are in conformity with the letters of instructions given by Gower Co. to their agents in this country; and the defendants suggest that they may make a different arrangement as to commissions, if Gower Co. will authorize them to accept and pay all drafts drawn by their agents, and value upon Gower Co. free from any other responsibility. The only testimony which is offered to show that the defendants, in drawing upon their London correspondents, relied upon the shipments of cotton made by the plaintiffs, is, that the bills of exchange drawn upon Gower Co. have a direction to charge the amount thereof to account of Dodge. But it appears from the letter last alluded to that Gower Co. had other agents in this country besides Dodge, to whom they were in the habit of making advances through the defendants; and it was necessary, for the purpose of keeping these accounts distinct from each other, that Gower Co. should know to which account the bills drawn upon them by the defendants should be charged. The case of Thomas v. Da Costa (8 Taunt., 345), which was relied upon by the defendants, shows that there may be an appropriation of the proceeds of consignments for the payment of bills drawn upon a person other than the consignee, where there is an express agreement to that effect; but neither that, nor any other case cited by the defendants, shows that either a court of law or of equity will make such an appropriation where there is no such agreement, express or implied, as is the case here.
Suppose, however, that we should come to the conclusion that, by the arrangement between the parties, there was an appropriation of the proceeds of the shipments to pay the *Page 586 
bills drawn by the defendants, does it follow that the defendants would be entitled to the fund in question? I think not. It will be remarked that this fund is the surplus which remains after debiting the whole of the bills drawn by the defendants, whether paid or unpaid. If Gower Co., instead of applying the proceeds of the shipments to the payment of the bills of the defendants, have misappropriated such proceeds, surely the plaintiffs ought not to be made the sufferers. They never became insurers, either for the integrity or business punctuality of the consignees in their dealings with the defendants; and there is no principle of law, equity or justice upon which consignments of the plaintiffs can be made subject to a lien or claim beyond the advances which have been made to them. As to the fund in controversy, no advances have ever been made either by the consignees or the defendants; and, as it is admitted that the plaintiffs were the consignors, they are entitled to it.
Judgment should be affirmed, with costs.